BEVERIDGE v. CRAWFORD COTTON MILLS et al.

(Circuit Court of Appeals, Fifth Circuit.   January 15, 1920.)

No. 3448.

Specific Performance ⊚=114(1)—Bill insufficient to show inadequacy
    of remedy at law.
        Bill for specific performance of an alleged contract between complainant and defendants for organization of a corporation, since formed by defendants, and division of its stock and offices, *held* not to state a cause of action for equitable relief; complainant's remedy, if any, being an action for damages.

Appeal from the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Suit in equity by George Beveridge against the Crawford Cotton Mills and others.   Decree for defendants, and complainant appeals. Affirmed.

Edgar E. Pomeroy and Charles E. Cotterill, both of Atlanta, Ga. (Moore & Pomeroy, of Atlanta, Ga., and W. W. Mundy, of Cedartown, Ga., on the brief), for appellant.

Richard B. Russell, of Atlanta, Ga., for appellees.

Before WALKER, Circuit Judge, and GRUBB and JACK, District Judges.

JACK, District Judge.   The plaintiff in error, alleging an agreement between himself and defendants Ingle and Comer for the formation of a corporation to take over and operate a cotton mill owned by Ingle, and likewise a mill on which Comer had an option, brought this suit against the said Ingle and Comer and against the Crawford Cotton Mills, a corporation organized by such parties pursuant to such agreement, to enforce specific performance of the alleged contract.

Petitioner avers that he is an expert in the handling and weaving of textile fabrics, and that he and certain other associates had in operation at Cedartown, Ga., a dyeing and finishing plant, and likewise a mill for the manufacture of duck; that, being desirous of forming a connection with other duck mills to supply material for his dyeing and finishing plant, he entered into an agreement with defendant Ingle to form a corporation to take over the White City Manufacturing Company plant owned by the latter.

This agreement, it is alleged, was superseded by a new agreement, entered into by petitioner and Ingle and defendant Comer, who held an option on two other mills, known as the Edwards mill and the

Edwards power plant. Under this agreement the Edwards properties were to be purchased for the sum of $135,000 by the proposed corporation, and such properties, together with the White City Manufacturing Company plant, to be acquired from Ingle at a price of $40,000, were to be bonded for $145,000, out of which the price of the Edwards properties were to be paid, less $20,000 cash to be advanced by Ingle and Comer. Thirty-five thousand dollars was to be borrowed from a selling agent to operate on. Petitioner further alleges that an expert engineer was employed, and that he appraised the three properties at $242,568.20.

This agreement, it is alleged, provided for the formation of the corporation, to be known as the Crawford Cotton Mills, with a capital stock of $250,000, $100,000 to be preferred stock and $150,000 common stock; that Ingle and Comer should receive preferred stock for the $20,000 cash advanced by them, and that Ingle should receive $40,000 of preferred stock for the White City plant and machinery and all merchandise and products on hand; that the common stock should be issued, one-third to each of the parties, and they in turn should then transfer back to the company, to be held as treasury stock, all but $45,000 of the common stock, each retaining $15,000 of common stock, for which each should execute his note to the corporation; that Beveridge should be president, Ingle vice president, and Comer manager, each at a salary of $10,000, out of which salaries were to be paid their notes at the rate of $5,000 a year.

Petitioner alleges that the corporation was organized and chartered, but that the stock was not issued as per agreement; that, on the contrary, Ingle and Comer demanded that he pay at once $15,000 in cash for his stock, which he refused to do, but for which amount he offered to execute his note, as per the original agreement; that subsequently he was presented a subscription blank to be signed, subscribing for 150 shares of preferred stock, $15,000, and 500 shares of common stock, $50,000, payment to be made on the call of the board of directors; that, being satisfied that this was a scheme to freeze him out, and that Ingle and Comer, constituting a majority of the board, would at once call upon him for the full amount of $65,000, he declined to sign the subscription blank, stating that he was willing to subscribe for the stock on the conditions and terms previously agreed upon by the parties, whereupon the stock in full was subscribed by Ingle and Comer and defendant O'Neal.

Petitioner avers that the White City Manufacturing Company plant and the Edwards properties were all taken over by the corporation, and bonds were issued as originally contemplated. He avers that the corporation refused to let him have anything to do with its management, and refused to pay him the salary as president agreed upon between the promoters.

Petitioner alleges that his damages "are too vague and indefinite to be the cause of an action at law, but that they would amount to the sum of $50,000, or other large sum." His prayer is that on final hearing Comer and Ingle be required to specifically perform the contract entered into, and that he be decreed the owner of 150 shares of the

common stock upon execution and payment of his note for that amount, and that he be declared the president of the corporation from the date of its organization at a salary of $10,000 a year; that Ingle and Comer be decreed to be the owners of such stock only as may have been subscribed and paid for by them, and that he have judgment against the Crawford Cotton Mills Company for the sum of $10,000 salary as president, and judgment against Ingle and Comer for the sum of $50,000 damages.

In an amendment to his petition plaintiff avers that, in accordance with an agreement with the defendants Ingle and Comer, he had made a trip to Philadelphia and New York, and secured the services of a competent selling agent, who agreed to and did thereafter advance to the company the sum of $35,000. The court below sustained a motion on behalf of the defendants to dismiss, holding that, even if plaintiff had a valid contract, his remedy was not in equity for specific performance, but an action in damages for its breach; that inasmuch, however, as plaintiff had expressly set forth in his petition that his damages were "too vague and indefinite to be the cause of an action at law," an order would not be entered transferring the case to the law docket. The court found that there was no equity in the petition, nor any ground for equitable relief set forth, and, further, that there was a misjoinder of parties and of causes of action.

In this ruling we think the court was correct. Plaintiff, recognizing the impossibility of the relief asked, before the final decree was signed, moved to strike out that portion of the prayer asking to be decreed president of the corporation and awarding him judgment for salary as such, and likewise to strike out his prayer for damages as against Ingle and Comer. The court disallowed the amendment, because it came too late, and, further, because it did not sufficiently change the character of the case to justify the relief prayed for in the petition as amended. The effect of this amendment, if allowed, would have been to eliminate the prayer for a moneyed judgment, and to restrict the equitable relief sought to a compliance with the alleged agreement of the promoters as to the issuance and division of the stock of the corporation.

The court had no more authority to decree the plaintiff owner of 150 shares of the common stock of the company, on his executing his own note therefor in accordance with such alleged agreement, than it had to declare him president of the corporation. Whatever remedy he had, if any, was at law for breach of contract, and by his own allegations his rights at law are too vague and indefinite to sustain a recovery.

Plaintiff had no contract whatever with the Crawford Cotton Mills, but relies altogether on an alleged agreement between him and the promoters of the corporation prior to its organization. The only claim that he could have against the corporation, which is a distinct legal entity from Ingle and Comer individually, is one for services rendered with reference to the purchase of looms and the acquisition of a sales agent, which, however, as the court stated, is so vaguely and indefinitely set out as not to be entitled to consideration.

The decree of the lower court will be affirmed.